792 F.2d 489
 1987 A.M.C. 1611
 RYAN WALSH STEVEDORING CO., INC., Plaintiff-Appellee,
v.
JAMES MARINE SERVICES, INC., Defendant-Appellant,
v.
U.S. FIRE INSURANCE COMPANY, Defendant-Appellee.
In the matter of the Complaint of JAMES MARINE SERVICE,
INC., Owner of the M/V HIAWATHA, for Exoneration
from or Limitation of Liability,
Plaintiff-Appellant,
v.
RYAN WALSH STEVEDORING COMPANY, and U.S. Fire Insurance
Company, Defendants- Appellees.
SOUTHERN PACIFIC TRANSPORTATION CO., Plaintiff,
v.
RYAN WALSH STEVEDORING, and U.S. Fire Insurance Company,
Defendants-Appellees,
v.
JAMES MARINE SERVICE, INC., Appellant.
 No. 84-3793.
 United States Court of Appeals,
Fifth Circuit.
 June 18, 1986.
 
 James Hanemann, Jr., Franklin C. Shaw, New Orleans, La., for James Marine Services, Inc.
 A. Gordon Grant, New Orleans, La., for U.S. Fire.
 Francis Emmitt and Randolph J. Waits, New Orleans, La., for Ryan Walsh.
 A. Danner Frazer, Jr., Mobile, Ala., Elizabeth Haecker Ryan, New Orleans, La., and M. Kathleen Miller, Mobile, Ala., for Ryan Walsh-Barge Frank L Only.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before CLARK, Chief Judge, and DAVIS, Circuit Judge.*
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 James Marine Service, Inc., challenges the amount of the award in an admiralty allision case. We affirm.
 
 I.
 
 2
 The derrick barge FRANK L, owned by Ryan Walsh Stevedoring Co., Inc., (Ryan Walsh), was in tow of the M/V HIAWATHA, owned by James Marine, when it collided with the Huey P. Long bridge spanning the Mississippi River near New Orleans, Louisiana, on April 2, 1980. The D/B FRANK L consisted of a derrick mounted on the deck of a barge and was used for loading and unloading vessels anchored in the Mississippi River. When the barge struck the bridge, the derrick toppled into the river where it was later retrieved and sold as salvage. The liability issue was tried first and James Marine was cast in judgment for the loss, which judgment was recently affirmed by this court. Ryan Walsh Stevedoring Co., Inc. v. James Marine Service, Inc., 729 F.2d 1457 (5th Cir.), cert. denied, sub nom. James Marine Service, Inc. v. Ryan Walsh Stevedoring Co., Inc., --- U.S. ----, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984). In the damage trial, the district court awarded Ryan Walsh $932,864.84 plus prejudgment interest for physical damage to the FRANK L and $1,064,239.33 plus prejudgment interest for loss of use of the vessel.
 
 
 3
 United States Fire Insurance Co. (USFI) provided primary coverage to James Marine and New York Marine Managers, Inc. provided the excess coverage. The district court held that USFI afforded no coverage for prejudgment interest that exceeded its policy limits; accordingly the court cast the excess insurer for the portion of the award that exceeded those limits, including prejudgment interest.
 
 
 4
 James Marine raises four issues on appeal: (1) whether the derrick barge was a constructive total loss, thus precluding damages for loss of use; (2) whether the amount of damages for loss of use was excessive; (3) whether damages for loss of use and prejudgment interest result in double recovery; and (4) whether USFI is liable for prejudgment in excess of its policy limits.
 
 II.
 A.
 
 5
 Appellant argues that the record will not support the district court's finding that the value of the D/B FRANK L before the accident exceeded the cost of repairs. Thus, appellant argues, the FRANK L was a constructive total loss and loss of use of the vessel while she was undergoing repairs is not recoverable.
 
 
 6
 The legal principles are well settled: A vessel is considered a constructive total loss when the cost of repairs is greater than the fair market value of the vessel immediately before the casualty. Todd Shipyards Corp. v. Turbine Service, Inc., 674 F.2d 401, 415 (5th Cir.), cert. denied, sub nom. Travelers Insurance Co. v. Todd Shipyards Corp., 459 U.S. 1036, 103 S.Ct. 448, 74 L.Ed.2d 603 (1982); G. Gilmore & C. Black, The Law of Admiralty Sec. 2-14 (2d ed.1975). Damages for loss of use may not be awarded when the vessel is a constructive total loss. King Fisher Marine Service, Inc. v. THE N/P SUNBONNET, 724 F.2d 1181, 1187 (5th Cir.1984). The district court found that the value of the D/B FRANK L was $2,000,000 and that this exceeded the cost of repairs which it fixed at $1,109,305.14. The district court arrived at the latter sum by adding the cost of physical repairs to the barge ($6,634.14) to the replacement cost of the crane ($1,102,671).
 
 
 7
 James Marine argues that the district court erred in rejecting the testimony of its two experts, Schubert and Thompson, who gave opinions that the fair market value of the vessel was less than the cost of the repairs. Thompson, a marine broker, testified that a crane similar to the one on the FRANK L could be installed on the barge for $350,000. Schubert appraised the crane at $600,000 and valued the barge at $100,000.
 
 
 8
 The two million dollar value the district court placed on the FRANK L was based primarily on the testimony of John L. McCarron, the president of Ryan Walsh. McCarron testified that "[b]ased on my personal experience on how the unit was performing, the business climate at the time, I feel that the crane was worth about two million dollars...." The district court also considered the fact that the hull was insured for $2,000,000. Other evidence supports a finding that the fair market value of the vessel exceeded $1,109,305.14, the cost of repairs. The United States Salvage Association in 1978 estimated the current market value of the FRANK L at $1,111,000. Around the time of the accident, Ryan Walsh purchased two derrick barges. It paid $1,200,000 for a barge with less capacity than the D/B FRANK L, and $2,100,000 for one with greater capacity than the FRANK L.
 
 
 9
 The district judge who heard the witnesses is in a much better position than us to resolve the conflicting testimony concerning the value of the vessel. Anderson v. City of Bessemer, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985). The record evidence amply supports a finding that the vessel had a value in excess of $1,109,305.14 and was not a constructive total loss. Because this finding is not clearly erroneous, the district court did not err in considering the loss of use of the D/B FRANK L as an element of Ryan Walsh's damages.
 
 B.
 
 10
 The appellant next contends that the award of $1,064,239.33 for loss of use of the FRANK L is excessive. The FRANK L was returned to service 539 days after the accident. James Marine argues that the D/B DOVER, acquired by Ryan Walsh fifty-five days after the accident, was a replacement for the FRANK L and Ryan Walsh should only recover loss of use damages for the fifty-five days it did not have the services of a derrick barge. Ryan Walsh argues that it was unable to immediately locate either a crane to rebuild the FRANK L or a vessel comparable to the FRANK L. According to Ryan Walsh, it was in critical need of a derrick barge to serve its customers and the D/B DOVER was the most suitable replacement it could find. It contends, however, that the DOVER was inferior to the FRANK L and while it enabled Ryan to keep its customers, it was not profitable. McCarron, president of Ryan Walsh, testified that the DOVER made thirty to forty percent less profit on bucket operations and twenty-five percent less profit on hook operations than the FRANK L. He also stated that some jobs were lost because of the DOVER's lack of capacity. Edward Johnson, the billing manager for Ryan Walsh, testified that the DOVER showed a gross loss. When asked why the DOVER was kept in use if it operated at a loss, he stated "Because of financial commitment that you have a long term mortgage on it not anticipating that we are going to run into maintenance problems with it. As well as not having availability of a replacement derrick, they were forced to use the DOVER until they got a comparable derrick to replace it."
 
 
 11
 The district court apparently credited this testimony and found that because the DOVER was unprofitable, her use did not reduce Ryan Walsh's lost profit while the FRANK L was out of service. This finding is not clearly erroneous.
 
 C.
 
 12
 Appellant next objects to the district court's award of prejudgment interest. The district court allowed Ryan Walsh to recover prejudgment interest on the award for physical damages to the barge from the date of the accident and permitted a recovery of interest on the loss of use award from the time the vessel was returned to service, until the judgment was entered.
 
 
 13
 We start from the bedrock premise that an award for prejudgment interest in actions under the general maritime law is the rule rather than the exception; prejudgment interest must be awarded unless unusual circumstances make an award inequitable. Todd Shipyards Corp., 674 F.2d at 415; Signal Oil & Gas Co. v. Barge W-701, 654 F.2d 1164, 1176 (5th Cir.1981), cert. denied, sub nom J. Ray McDermott & Co., Inc. v. Signal Oil & Gas Co., 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982).
 
 
 14
 Appellant contends that the award of prejudgment interest in this case is inequitable for two reasons. First, it argues that awarding prejudgment interest on the recovery for loss of use results in double recovery and cites Independent Bulk Transport, Inc. v. Vessel MORANIA ABACO, 676 F.2d 23 (2d Cir.1982); The Hygrade No. 24 v. The Dynamic, 233 F.2d 444, 447-48 (2d Cir.1956); Stevens v. F/S BONNIE DOON, 731 F.2d 1433 (9th Cir.1984) in support of this position. It also contends that if prejudgment interest is awarded on the cost of repairs, it should be awarded from the date the repair bills are paid rather than from the date of the accident.
 
 
 15
 Appellant argues persuasively that an award of prejudgment interest on lost profit results in a double recovery. But this circuit has consistently allowed prejudgment interest on a loss of use award. Domar Ocean Transportation Ltd. v. M/V ANDREW MARTIN, 754 F.2d 616 (5th Cir.1985); Todd Shipyards Corp., 674 F.2d 401; Complaint of M/V VULCAN, 553 F.2d 489 (5th Cir.), cert denied, sub nom. Sabine Towing & Transportation Co., Inc. v. Zapata Ugland Drilling, Inc., 434 U.S. 855, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977). See also Noritake Company, Inc. v. M/V HELLENIC CHAMPION, 627 F.2d 724 (5th Cir.1980); Signal Oil & Gas Co. v. Barge W-701, 468 F.Supp. 802 (1979), later opinion, 1980 AMC 1466 (E.D.La.), aff'd in part, rev'd in part, 654 F.2d 1164 (5th Cir.1981), cert denied, 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982); Delta Steamship Lines, Inc. v. Avondale Shipyards, Inc., 1983 AMC 2814 (E.D.La.1982), aff'd in part, rev'd in part, 747 F.2d 995 (1984), on reh'g, 753 F.2d 378 (5th Cir.1985). Although we have not given detailed reasons for allowing interest on a loss of use award, the Eleventh Circuit, in a recent opinion explained such a ruling as follows: "Interest is awarded not as a penalty or as compensation for loss of property use, but as compensation for the use of funds to which the plaintiff was ultimately judged entitled, but which the defendant had the use of prior to judgment." Miller Industries v. Caterpillar Tractor Co., 733 F.2d 813, 823 (11th Cir.1984). The district court properly applied binding precedent from this circuit in awarding prejudgment interest on the loss of use award. Similarly, this circuit has consistently held that prejudgment interest on repair costs runs from the date of the accident even though the owner does not pay these costs until some later date. Mobil Oil Corp. v. Tug PENSACOLA, 472 F.2d 1175 (5th Cir.1973); Signal Oil & Gas, 654 F.2d 1164; see also, Noritake Company, Inc., 627 F.2d 724, Socony Mobil Oil Company, Inc. v. Texas Coastal & International, Inc., 559 F.2d 1008 (5th Cir.1977).
 
 D.
 
 16
 Finally, appellant argues that USFI, as primary insurer, is liable for prejudgment interest in excess of its policy limits. A marine insurer is not liable for interest in excess of its policy limits unless language in the policy so provides. Alcoa Steamship Co. v. Charles Ferran, & Co., 443 F.2d 250 (5th Cir.1971), cert. denied, sub nom. Underwriters at Lloyds London v. Alcoa Steamship Co., 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 94 (1971). Because USFI's policy does not expressly provide for payment of prejudgment interest in excess of the policy limits; the district court correctly declined to impose liability on USFI for this interest.
 
 The judgment of the district court is
 
 17
 AFFIRMED.
 
 
 
 *
 Due to his death on March 27, 1986, Judge Albert Tate, Jr. did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. 46(d)