Nell Molane HEBERT, wife of/and
Leray Hebert, Jr.

v.

EXXON CORPORATION.

Civ. A. Nos. 86–582, 91–131.

United States District Court,
E.D. Louisiana.

Aug. 16, 1991.

E. Burt Harris, William B. Matthews, Jr., New Orleans, La., for Exxon Corp.

Clarence F. Favret, III, Favret, Favret, Demarest & Russo, New Orleans, La., for Robert Petterson and Roger Loubier.

Russell D. Pulver, Ellefson, Pulver & Staines, Metairie, La., for Albany Ins. Co.

A. Gordon Grant, Jr. and Robert E. Durgin, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., for INA of Texas.

Douglas P. Matthews, Lemle & Kelleher, New Orleans, La., for Employers Nat. Ins. Co.

Clarence F. Favret, III, Favret, Favret, Demarest & Russo, New Orleans, La., for Vapor Tech, Inc.

Peter L. Hilbert, Jr., Kathleen K. Charvet, Darnell Bludworth, McGlinchey, Stafford, Mintz, Cellini & Lang, P.C., New Orleans, La., for Gretna Mach. and Iron Works, a Div. of Trinity Industries, Inc.

## ORDER AND REASONS

MENTZ, District Judge.

The Court addresses here (1) whether the cross-claimant, Exxon Shipping Company (Exxon), is entitled to an award of prejudgment interest on its property damages claim, and (2) the amount of the marine insurance policy limits provided by INA of Texas on behalf of its insured, Trinity Industries, Inc.

## I. BACKGROUND

This case involves the November 13, 1985 explosion of Exxon's barge, the EB 334. On June 5, 1986, Exxon timely filed a petition for exoneration from or limitation of liability. In September, 1989, the Court tried the issues of exoneration and limitation. The Court determined that Exxon was not negligent and granted its petition for exoneration. *See Hebert, et al. v. Exxon Corporation, et al.,* Nos. 86–582, 86–2342, 86–4935, and 87–129, 1990 WL 19814 (E.D.La. Feb. 23, 1990), *aff'd, In re Complaint of Exxon Shipping Company,* 921 F.2d 274 (5th Cir.1990).

After the district court's opinion was affirmed on appeal, the parties settled all personal injury claims against the remain-

ing defendants. In addition, the parties stipulated that the fair market value of the EB 334 at the time of the explosion was $375,000, and that the cost of repairs to Exxon's truck which was damaged in the explosion was $759.53. The parties submitted exhibits and briefs to the Court for a determination of liability for Exxon's property damages.

On May 31, 1991, the Court issued an opinion finding both cross-defendants, Gretna Machine and Iron Works, Inc., a Division of Trinity Industries, Inc. and Vapor Tech, Inc., liable for Exxon's stipulated damages. The Court allocated fault 70% to Gretna Machine and 30% to Vapor Tech. At that point, the remaining issues for resolution were: 1) the third-party complaint of Vapor Tech, Roger Loubier, and Robert Petterson against Employers National Insurance Company, the general liability insurer for Trinity Industries, Inc., for insurance coverage; 2) Exxon's claim for prejudgment interest on its property loss; and 3) Albany Insurance Company's Motion for Summary Judgment on the applicable limits of the primary marine liability insurance policy issued by INA of Texas to Trinity Industries. Thereafter, Employers National advised the Court that it would not contest insurance coverage for Vapor Tech, Loubier, and Petterson. Thus, the third-party complaint of Vapor Tech, Loubier, and Petterson against Employers National is MOOT. The remaining two issues are discussed below.

## II. PREJUDGMENT INTEREST ON EXXON'S PROPERTY DAMAGES

■ In a case governed by the general maritime law, prejudgment interest is usually awarded unless there are peculiar circumstances that make an award of prejudgment interest inequitable. *Reeled Tubing, Inc. v. M/V CHAD "G",* 794 F.2d 1026, 1028 (5th Cir.1986). "Peculiar circumstances may be found where plaintiff improperly delayed resolution of the action, where a genuine dispute over a good faith claim exists in a mutual fault setting, where some equitable doctrine cautions against the award, or where the damages

award was substantially less than the amount claimed by plaintiff." *Id.*

Here, the defendants to Exxon's cross-claim for property damage argue that peculiar circumstances exist to justify denial of prejudgment interest, citing *In re P & E Boat Rentals, Inc.,* 872 F.2d 642, 654–55 (5th Cir.1989). Having reviewed the history of this litigation and the applicable law, the Court finds no peculiar circumstances justifying denial of prejudgment interest.

■ Unlike the plaintiff in *P & E Boat Rentals,* Exxon is not guilty of any improper delay tactics. The fact that Exxon did not file its limitation petition for seven months and its cross-claim until a year after the barge explosion does not justify denial of prejudgment interest either in toto or for the time prior to judicial demand. *See Lone Star Industries, Inc. v. Mays Towing Co., Inc.,* 725 F.Supp. 440, 445–46 (E.D.Mo.1989), *rev'd on other grounds,* 927 F.2d 1453 (8th Cir.1991) (2¼ year delay in filing suit after accident insufficient to support denial or limitation of prejudgment interest). Exxon's motion to bifurcate trial, allowing Exxon's petition for exoneration to be tried first, was approved by the Court as an economizing measure. Unlike the bifurcation in *P & E Boat Rentals,* there is no evidence that the bifurcation in the case at bar resulted in any unfair delay to the defendants. In fact, after Exxon was exonerated from liability, the personal injury claimants settled with the remaining defendants, thereby saving several weeks of trial. The delay resulting from the two appeals in which Exxon's position was upheld is not a valid basis for denying Exxon prejudgment interest. Nor is it a peculiar circumstance that this was a complicated case involving multiple parties and claims. *See Orduna S.A. v. Zen-Noh Grain Corp.,* 913 F.2d 1149 (5th Cir.1990). Although Exxon asserted a legally unfounded loss of use claim, *see Ryan Walsh Stevedoring Co. v. James Marine Services, Inc.,* 792 F.2d 489 (5th Cir.1986) (damages for loss of use may not be awarded where the vessel is a constructive total loss), it dismissed the claim

prior to trial, and there is no evidence that the assertion of that claim caused any undue delay or other prejudice justifying denial of prejudgment interest.

■ That the defendants also were not guilty of any delay tactics has no bearing on whether to award prejudgment interest. The purpose of awarding prejudgment interest is not to punish the defendants, but to compensate the plaintiff for "the use of funds to which the plaintiff was entitled, but which the defendant had the use of prior to judgment." *Ryan Walsh*, 792 F.2d at 493.

■ The defendants also argue that prejudgment interest should be denied because of Exxon's unwillingness to negotiate settlement. Undeniably, there were allegations of mutual fault in this case. Exxon was the deep pocket target. While the claims against Exxon were not in bad faith, the claims were weak. Exxon's resolute position that it was without fault ultimately was established at trial, and Exxon was exonerated from liability. With respect to Exxon's property damage claim, the parties' eventually stipulated to a valuation of Exxon's barge and other property, totalling $375,759.53, which is 90% of the $420,000 demand in Exxon's cross-claim. Certainly, 90% is a substantial recovery. *See Orduna*, 913 F.2d at 1158 (prejudgment interest allowed where the recovery was 83% of the amount sought at trial); *Cf. E.I. DuPont de Nemours & Co., Inc. v. Robin Hood Shifting & Fleeting Serv., Inc.*, 899 F.2d 377 (5th Cir.1990) (prejudgment interest denied where the plaintiff's valuation was two times higher than the amount awarded). Under these circumstances, Exxon's unwillingness to negotiate settlement was not in bad faith, and does not constitute a peculiar circumstance.

■ The Court further finds that prejudgment interest at the annual rate provided by Louisiana Civil Code article 2924(B) will fairly compensate Exxon. Exxon's request for daily compounding of the interest rate is without merit. There are no circumstances to suggest that compounding annually will undercompensate Exxon. *Cf. Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 753 (5th Cir. 1985) (court permitted daily compounding of state statutory rate based on the unusually high prime rate of return available to investors during the litigation).

## III. PRIMARY MARINE LIABILITY INSURANCE POLICY LIMITS

Trinity Industries, Inc. (Trinity) filed a Complaint for Declaratory Relief seeking a determination of coverage and policy limits provided by its primary marine liability insurer, INA of Texas (INA), and its excess marine liability insurer, Albany Insurance Company (Albany), for Exxon's property damage claim. Thereafter, Albany filed a motion for summary judgment on the applicable limits of liability provided by INA for Exxon's property loss.

Neither INA nor Albany dispute that they provided coverage to Trinity and its division, Gretna Machine, for Exxon's property damages claim. INA provides coverage pursuant to a policy of marine insurance (policy No. HU 503003), and Albany Insurance Company provides coverage pursuant to a policy of excess marine liability insurance (policy No. GH 311), but only to the extent that the primary underlying limits of the INA policy are exceeded.

The dispute between INA and Albany centers on the applicable limits of the INA policy. The INA policy contains a ship repairer's liability section with a $1,000,000 limit, and also a wharfinger's section with a $500,000 limit. Both of these sections were amended by an endorsement to include gas freeing operations, which is what Gretna Machine had undertaken at the time of the explosion of the EB 334. Thus, the applicable limit of liability and whether the primary limits are exceeded depend on whether the subject loss falls within the ship repairer's liability section or the wharfinger's liability section of the INA policy.[1]

---

1. The $500,000 coverage limit for wharfinger's liability is inclusive of wreck removal costs and legal defense costs, fees, and expenses. INA has incurred expenses of $94,500 for wreck removal

The wharfinger's liability section of the INA policy, Section III, paragraphs 1A(1) and 6 provides:

1. [T]his Company agrees to indemnify the Insured ... of all sums which the Insured shall become obligated to pay:

 A. By reason of the liabilities imposed upon the Insured by law for accidental:

 1) loss of or damage to barges ... (including the cost or expense of or incidental to the removal of wreck of such property), ... while such property is in the custody of the Insured at their landing and mooring facilities described below....

 . . . . .

6. This Company shall not be liable for more than $500,000 in account of claims costs and expenses arising out of one casualty or occurrence under all policy coverages combined nor far (sic) more than:

 $500,000 with respect to any one vessel
 . . .

The ship repairer's liability section of the INA policy, Section IV, paragraphs 1A and 3, provides:

1. . . .

 A. This insurance is to cover the legal liability of the Assured as ship repairers for loss or damage to vessels ... which are in their care, custody, or control for the purpose of alteration or repair ...

3. The maximum liability of this Company on account of any one disaster or casualty shall not exceed:

 $1,000,000 with respect to each vessel
 . . . .

and $106,133.09 for defense costs, totalling $200,633.09. Taking into account the $500 deductible, the remaining limit under the INA policy is $298,866.91. Considering the stipulated property damages totalling $375,759.53, the allocation of 70% fault against Trinity and its division Gretna Machine, and prejudgment interest, it is clear that the judgment against Trinity and Gretna will exceed the $500,000 limit for wharfinger's liability, but not the $1,000,000 limit for ship repairer's liability.

The INA policy does not provide coverage for prejudgment interest beyond the policy limits.

Endorsement No. 4 of the INA policy further provides that:

In consideration of the Premium charged, Sections III [Wharfinger's Liability] and IV [Ship Repairer's Liability] are amended to include the following:

Notwithstanding anything contained herein to the contrary, this policy is extended to cover the insured's legal liability for vessels in their care, custody or control for gas freeing operations provided such work is done in accordance with the requirements of the rules and regulations prepared by the National Fire Protection Association or Bureau of shipping or any revisions or amendment thereof.

■ The issue before the Court is whether the cleaning and gas freeing of the EB 334 is a "repair or alteration" within the meaning of the ship repairer's liability section of the INA policy, thereby subjecting INA to the greater $1,000,000 limit of liability provided by that section.

Exxon brought the EB 334 to Gretna Machine & Iron Works for cleaning and gas freeing. A new cleaning process called vapor stripping was to be used to clean the barge. In the vapor stripping process, liquid perchloroethaylene (perc), a non-flammable, non-explosive chemical, is vaporized and injected into the barge tanks, where it condenses on the tank surfaces and dissolves petroleum product build-up. Then the dissolved residue is removed with a vacuum hose. At the time of the explosion, one of the Gretna Machine employees was putting liquid perc in one of the barge compartments to soften the crude oil residues in the bottom of the tank, and thereby facilitate the cleaning process.[2]

See *Ryan Walsh Stevedoring Co., Inc. v. James Marine Serv., Inc.,* 792 F.2d 489, 493 (5th Cir. 1986) ("A marine insurer is not liable for interest in excess of its policy limits unless language in the policy so provides").

2. In a prior opinion, the Court determined that this procedure, which was a deviation from the vapor stripping process, was a legal cause of the explosion inasmuch as Gretna Machine did not use a grounded hose in transferring the liquid perc through the top of the barge tank. *See* Memorandum Opinion of May 31, 1991.

Albany argues that the $1,000,000 limit of liability in the ship repairer's section of the INA policy applies to Exxon's loss because the intended cleaning and gas freeing of the EB 334 was an "alteration" as that term is used in the ship repairer's liability section. Albany's position is that the term "alteration" does not require any physical modification, that cleaning and gas freeing a barge is an alteration, and that a procedure as risky as vapor stripping should be subject to the greater limits of liability. Albany argues that the lower limits in the wharfinger's section do not apply because that section is intended to cover vessels on which no work is being performed. Alternatively, Albany argues that because Endorsement No. 4 of the INA policy amends *both* Sections III and IV to cover gas freeing operations, then a loss related to gas freeing must be covered under both sections, thereby creating an ambiguity, which when interpreted against INA, the drafter, requires enforcement of the higher limits of liability.

INA argues that since no repair, alteration or modification of the EB 334 was performed or even contemplated, Section III of INA's policy providing a $500,000 wharfinger's limit of liability applies. INA contends that Endorsement No. 4 does not create any ambiguity, but plainly extends the applicable coverage under either the wharfinger's liability section or the ship repairer's liability section to include any period when gas freeing operations are performed.

Louisiana law governs the interpretation of the INA policy. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).

Under Louisiana law, a court should interpret an insurance policy under ordinary principles for the interpretation of a contract. The intention of the parties, as reflected by the words of the policy, should determine the extent of coverage. The words should be given their plain meanings, and the court should not change the coverage of the policy under the guise of interpreting ambiguous language. The court should consider the policy as a whole, and interpret the policy to fulfill the reasonable expectations of the parties in light of the customs and usages of the industry. If a clause remains ambiguous after such consideration, then it should be construed against the insurer. [Footnotes omitted].

*Trinity Industries, Inc. v. Ins. Co. of North America*, 916 F.2d 267 (5th Cir. 1990).

 Giving the INA policy a plain reading, the Court finds that Endorsement No. 4 to the INA policy unambiguously extends the applicable coverage of Sections III and IV to include gas freeing operations. Thus, when a gas freeing operation is performed in connection with an alteration or repair to a vessel, the ship repairer's liability section applies; whereas, when a gas freeing operation is performed, but not for the purpose of making a repair or alteration, then the wharfinger's liability section applies.

This interpretation gives meaning to the policy as a whole. If gas freeing were an "alteration or repair" as Albany argues, then the endorsement extending ship repairer's liability coverage to include gas freeing operations would not have been necessary. In addition, if the wharfinger's liability section were intended to cover only vessels in Trinity's custody on which *no* work is being performed, then the endorsement extending wharfinger's liability coverage to include gas freeing operations would have no meaning.

 To say that cleaning or gas freeing a barge is an "alteration or repair" because it would enable the barge to carry a type of petroleum product that it could not carry prior to gas freeing is a strained interpretation of those terms. In the Court's opinion, the plain meaning of the term "alteration" is some sort of physical change in the vessel, and the plain meaning of the term "repair" is a restoration to a state of soundness after some sort of injury or ruin.

In the case at bar, Exxon's barge was being gas freed to enable it to carry refined petroleum products and to meet a scheduled Coast Guard inspection. The

barge was not being gas freed in connection with an alteration or repair, as the Court interprets those terms. No alterations or repairs were planned or performed. Neither Exxon nor Gretna Machine contemplated any hot work on the EB 334. Under these circumstances, the Court finds that the wharfinger's liability section, rather than the ship repairer's liability section, of the INA policy covers Exxon's property loss. Therefore, in accordance with the provisions of paragraph 6 in the wharfinger's liability section, the applicable limit of liability is $500,000.

Accordingly,

IT IS ORDERED that:

1) The third-party complaint of Vapor Tech, Inc., Roger Loubier, and Robert Petterson against Employers National Insurance Company is DISMISSED as MOOT.

2) The Motion of Cross-defendant, INA of Texas, to Dismiss Exxon Shipping Company's claim for prejudgment interest is DENIED.

3) The Motion of Cross-defendant, Vapor Tech, Inc., to Oppose Prejudgment Interest is DENIED.

4) The Motion of Cross-defendant, Gretna Machine & Iron Works, a Division of Trinity Industries, Inc., to Dismiss Exxon Shipping Company's claim for prejudgment interest is DENIED.

5) Prejudgment interest on Exxon Shipping Company's cross-claim shall be awarded from the date of the loss at the legal rate provided in Louisiana Civil Code article 2924(B), compounded annually.

6) The Motion for Summary Judgment on behalf of Albany Insurance Company is DENIED.

7) The Complaint for Declaratory Relief filed by Trinity Industries, Inc. is DISMISSED, Exxon Shipping Company's cross-claim for property damages having been determined to be covered by the wharfinger's liability section of the INA policy No. HU 503003 for not in excess of $500,000.

8) The parties shall submit a joint proposed judgment in this matter not later than August 29, 1991.