# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**25-478**


**STEVE CROOKS, ET AL.**

**VERSUS**

**STATE OF LOUISIANA, THROUGH THE
LOUISIANA DEPARTMENT OF NATURAL RESOURCES, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 224,262
HONORABLE JAMES H. BODDIE, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
## JUDGE

\*\*\*\*\*\*\*\*\*\*


Court composed of Van H. Kyzar, Charles G. Fitzgerald, and Clayton Davis, Judges.


**AFFIRMED AS AMENDED.**

J. Michael Veron
Turner D. Brumby
Veron Bice, LLC
P.O. Box 2125-2125
Lake Charles, LA 70602
(337) 310-1600
CLASS COUNSEL/APPELLANTS

James J. Davidson, III
Christopher J. Piasecki
Davidson, Meaux, Sonnier, McElliott, Fontenot, Gideon & Edwards
P.O. Box 2908
Lafayette, LA 70502-2908
(337) 237-1660
CLASS COUNSEL/APPELLANTS

V. Russell Purvis
Smith, Taliaferro & Purvis
P.O. Box 298
Jonesville, LA 71343
(318) 339-8526
CLASS COUNSEL/APPELLANTS

Charles S. Weems, III
Trevor Fry
Stephen A. LaFleur
Gold Weems Bruser Sues & Rundell
P.O. Box 6118
Alexandria, LA 71307-6118
(318) 445-6471
CLASS COUNSEL/APPELLANTS

Robert M. Baldwin
G. Adam Cossey
Hudson, Potts & Bernstein, LLP
P.O. Drawer 3008
Monroe, LA 71210-3008
(318) 388-4400
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Dennis Breland, Sheila Hudspeth, Jackie Wilson, Chet Whatley, Michael "Ben" Whatley, John Dahl Duke, Roger "Rocky" Ray, Nellie Ray Constance, Jeffery Willis, Michelle Willis, Chase Willis, Lindsay Willis, Trent Dauzat, John Little, Jennifer Little, Meredith Hailey, Carrie Lynn Huffman, Ricky Shirley, Dana Shirley, John "Rusty" Berry, Lauren Marie Berry, and Clarence William "Bill" Breland, Jr.

James L. Carroll
Mixon, Carroll, & Frazier, LLC
P.O. Drawer 1619
Columbia, LA 71418
(318) 649-9284
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Dennis Breland, Sheila Hudspeth, Jackie Wilson, Chet Whatley, Michael "Ben" Whatley, John Dahl Duke, Roger "Rocky" Ray, Nellie Ray Constance, Jeffery Willis, Michelle Willis, Chase Willis, Lindsay Willis, Trent Dauzat, John Little, Jennifer Little, Meredith Hailey, Carrie Lynn Huffman, Ricky Shirley, Dana Shirley, John "Rusty" Berry, Lauren Berry, and Clarence William "Bill" Breland, Jr.

Charles G. Blaize
Fondren Blaize
10101 Siegen Lane, Suite 4-B
Baton Rouge, LA 70810
(225) 810-4998
COUNSEL FOR PLAINTIFF/APPELLEES:
    Steve Crooks, Class Representative
    Era Lea Crooks

Jimmy R. Faircloth, Jr.
Barbara Bell Melton
Faircloth Melton Bash & Green, LLC
105 Yorktown Drive
Alexandria, LA 71303
(318) 619-7755
COUNSEL FOR INDIVIDUAL PLAINTIFF/APPELLEE:
    Justiss Oil Company, Inc.

Dale R. Baringer
William H. Caldwell
Ferdinand P. Leonards
Baringer Law Firm
201 St. Charles Street
Baton Rouge, LA 70802
(225) 383-9953
COUNSEL FOR INDIVIDUAL PLAINTIFF/APPELLEE:
    Foster Investment Corporation

Gladstone N. Jones, III
Kevin E. Huddell
Emma Daschbach
Lindsay E. Reeves
Jones, Swanson, Huddell, LLC
601 Poydras Street, Suite 2655
New Orleans, LA 70130
(504) 523-2500
COUNSEL FOR INDIVIDUAL PLAINTIFFS/APPELLEES:
    Catahoula Lake Investments, LLC
    David Ivey
    Michell Ivey
    Anthony J. Perentin

Bernard E. Boudreaux, Jr.
John T. Arnold
Jones, Swanson, Huddell, LLC
301 Main Street, Suite 1920
Baton Rouge, LA 70801
(225) 810-3165
COUNSEL FOR INDIVIDUAL PLAINTIFFS/APPELLEES:
    Catahoula Lake Investments, LLC
    David Ivey
    Michelle Ivey

Scott Linzay
94 Albert Oneal Road
Deville, LA 71328
INDIVIDUAL PLAINTIFF/APPELLEE:
PRO SE

Liz Murrell
Attorney General
Amy D. Richard
David A. Peterson
Assistant Attorneys General
Louisiana Department of Justice
P.O. Box 94005
Baton Rouge, LA 70804-9005
(225) 326-6550
COUNSEL FOR DEFENDANTS/APPELLEES:
    State of Louisiana
    Louisiana Department of Natural Resources

**Joseph J. Bailey**
**H. Bradford Calvit**
**Provosty Sadler & deLaunay, APC**
**P. O. Drawer 71315**
**Alexandria, LA 71303**
**(318) 445-3631**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**State of Louisiana**
**Louisiana Department of Natural Resources**

**Richard L. Traina**
**Steeg Law Firm, LLC**
**201 St. Charles Avenue, Suite 3201**
**New Orleans, LA 70170**
**(504) 582-1199**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**State of Louisiana**
**Louisiana Department of Natural Resources**

**Scott Johnson**
**Sean Porter**
**Office of General Counsel**
**Division of Administration**
**1200 North Third Street, Suite 7-270**
**Baton Rouge, LA 70802**
**(225) 342-7154**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**State of Louisiana**
**Louisiana Department of Natural Resources**

**KYZAR, Judge.**

In this long-standing class-action litigation, Class Counsel[1] appeals the reduction of the original award of attorney fees and the commencement date set by the trial court for the running of interest on the award. For the following reasons, we amend the trial court's award of attorney fees and the date from which interest on the award is to commence and affirm as amended.

## FACTUAL AND PROCEDURAL HISTORY

This class action litigation involves the ownership of riverbanks in the Catahoula Basin and the associated mineral royalty payments. This case has been before this court and the Louisiana Supreme Court multiple times during the course of its litigation. A detailed background of this matter is contained in one of this court's earlier opinions, *Crooks v. Department of Natural Resources*, 23-478 (La.App. 3 Cir. 3/6/24), 2024 WL 954450 (unpublished opinion).

This litigation has been ongoing for almost twenty years, with the initial petition being filed on May 4, 2006. As set forth in our earlier opinion, the original plaintiffs, Steve Crooks and Era Lea Crooks, asserted that they represented a class of landowners in the Catahoula Basin whose property was affected by the increased water levels resulting from a congressionally approved navigation project to promote navigation on the Ouachita and Black Rivers. The trial court certified the plaintiffs as one class (referred to as "Class Plaintiffs") but subdivided the class into two

---

[1] The listed Class Counsel involved in this appeal are J. Michael Veron and Turner D. Brumby of Veron Bice, LLC; James J. Davidson, III and Christopher J. Piasecki of Davidson, Meaux, Sonnier, McElligott, Fontenot, Gideon & Edwards; V. Russell Purvis, Jr. of Smith, Taliaferro & Purvis; and Charles S. Weems, III, Trevor Fry, and Stephen A. LeFleur of Gold Weems Bruser Sues & Rundell.

groups depending on the location of the affected properties: the "Lake Plaintiffs" and the "Swamp Plaintiffs."

Specifically, the Lake Plaintiffs are those property owners who sought ownership of the land between the ordinary low and ordinary high water mark of Little River, which is located within the area known as Catahoula Lake, and a declaration that these lands were unlawfully expropriated by the navigation project, which obstructed the natural servitude of drainage. The Lake Plaintiffs also sought damages for inverse condemnation and recovery of mineral royalties and other payments received by the State from mineral leases granted over the immovable property at issue.

The Swamp Plaintiffs are those persons owning property in the southwestern portion of the Catahoula Basin, designated as "overflow lands." Much of the land bordering and lying outside Catahoula Lake was approved as swampland and transferred to the State by the federal government under the Swampland Acts of 1849 and 1850. It is not disputed that these lands are below an elevation of thirty-six feet mean sea level and that their titles originated from patents issued by the State. Because ownership of these swampland tracts is not disputed, these plaintiffs ultimately sought only a declaration of unlawful expropriation and damages for the inverse condemnation.[2]

The central issue presented to the trial court in the claim of the Lake Plaintiffs was the classification of the area known as Catahoula Lake. The Lake Plaintiffs contended that although, referred to as a lake, the area actually constitutes the banks

---

[2] The State did not acknowledge the Swamp Plaintiffs' ownership claims until the filing of a reconventional demand on December 11, 2013, which was over seven years after the filing of the petition.

of Little River, thus, conferring on the Lake Plaintiffs ownership of those lands between the ordinary low and the ordinary high-water mark as per La.Civ.Code art. 456.[3]

A bench trial was held in 2015, after which the trial court rendered Written Reasons for Judgment, dated May 16, 2016, declaring that the body of water in the Catahoula Basin was a permanent river that seasonally overflowed and covered its banks; the riparian landowners, i.e., the Lake Plaintiffs, were the owners of these river banks; and the State is liable for the inverse condemnation of these lands because of the significant obstruction of the natural servitude of drainage.

Thereafter, the parties filed motions and oppositions regarding attorney fees, costs, and incentive awards. On March 29, 2017, the trial court rendered Written Reasons for Judgment, declaring the Lake Plaintiffs the owners of 22,813.48 acres of land and awarding them expropriation damages in the amount of $28,745,438.40, based on a value of $1,260.00 per acre,[4] and $4,694,309.68 in oil and gas royalties.[5] The trial court also declared the Swamp Plaintiffs the owners of 7,580 acres of the overflow lands and awarded expropriation damages in the amount of $9,550,800.00, based on the same value of $1,260.00 per acre. It further awarded legal interest on all awards to run from May 4, 2006, until paid.

---

[3] Louisiana Civil Code Article 456 provides that "[t]he bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water[]" and that "[t]he banks of navigable rivers or streams are private things that are subject to public use."

[4] Michael Copes, who was qualified as an expert in the field of real estate appraisals, determined the value of the servitude of drain to be $1,260.00 per acre.

[5] This was based on three years of royalties because La.Civ.Code art. 3494 provides a liberative prescriptive period for actions to recover underpayment or overpayment of royalties from the production of minerals.

The trial court also included a lengthy explanation for setting attorney fees for Class Counsel in the amount of $22,075,843.82 and, pursuant to La.R.S. 13:5111[6] and La.Code Civ.P. art. 595,[7] ordered seventy-five percent of the attorney fee award, $16,556,882.87, to be paid by the State, and twenty-five percent, $5,518,960.95, to be assessed against the class's common fund. A judgment encompassing the entirety of the issues was signed on May 15, 2017.

The State appealed the judgment to this court, including the award of attorney fees. Another panel of the court affirmed the award but determined that since the taking of Class Plaintiffs' land was committed by the United States, and not the State, La.R.S. 13:5111 did not apply and, therefore, ordered that 100% of the attorney fees be assessed against the common fund pursuant to La.Code Civ.P. art. 595. *Crooks v. Dep't of Nat. Res.*, 17-750 (La.App. 3 Cir. 12/28/18), 263 So.3d 540.

The State applied for a supervisory writ to the Louisiana Supreme Court, which was granted and briefing was ordered on the limited issue of whether "[t]he lower courts erred in failing to find that the Plaintiffs' inverse condemnation claims have prescribed under either or both La. R.S. 13:5111 or 28 U.S.C. § 2501." *Crooks v. Dep't of Nat. Res.*, 19-160, p. 1 (La. 5/6/19), 269 So.3d 691, 691. Plaintiffs did not seek a supervisory writ regarding this court's judgment that all attorney fees were to be paid from the common fund pursuant to La.Code Civ.P. art. 595.

---

[6] Louisiana Revised Statutes 13:5111(A) provides that the trial court "shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred" in securing a judgment "against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding[.]"

[7] Louisiana Code of Civil Procedure Article 595(A) provides that "[t]he court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class."

4

The supreme court, thereafter, held that the inverse condemnation claims were prescribed and reversed that portion of the judgment which awarded the Lake Plaintiffs $28,745,438.40, with interest thereon, and the Swamp Plaintiffs $9,550,800.00, with interest thereon. *Crooks v. Dep't of Nat. Res.*, 19-160 (La. 1/29/20), 340 So.3d 574, *opinion corrected on reh'g* (La. 4/9/20) (per curiam). The appellate court judgment was otherwise affirmed. In response to a rehearing application by Class Plaintiffs, in part, to correct footnote nine in the opinion, the supreme court clarified that the award for attorney fees, expert witness fees, and costs were not at issue in the writ application.

With the overturning of the inverse condemnation award, a disagreement arose between Class Counsel and some members of the class over the amount of attorney fees due Class Counsel. Substitute counsel were retained for the disgruntled Plaintiffs (referred to collectively as "Plaintiffs"),[8] and on March 17, 2022, Plaintiffs filed a Motion to Set Attorneys' Fees of Class Counsel. The basis for the motion was that the attorney fees awarded in the 2017 judgment now exceeded the available monetary recovery placed in the common fund by the State. Plaintiffs argued that the amount of attorney fees awarded should be reduced proportionately to the reduction of the total award resulting from the supreme court's overturning of the inverse condemnation awards. They further argued that with the overturning of the inverse condemnation award, the common fund only contained money from the royalties awarded to the Lake Plaintiffs. Plaintiffs also asserted that res judicata did

---

[8] As listed in their April 7, 2025 motion to tender attorneys, Plaintiffs are Dennis Breland, Sheila Hudspeth, Jackie Wilson, Chet Whatley, Michael "Ben" Whatley, John Dahl Duke, Roger "Rocky" Ray, Nellie Ray Constance, Jeffery Willis, Michelle Willis, Chase Willis, Lindsay Willis, Trent Dauzat, John Little, Jennifer Little, Meredith Hailey, Carrie Lynn Huffman, Ricky Shirley, Dana Shirley, John "Rusty" Berry, Lauren Berry, and Clarence William "Bill" Breland, Jr.

not apply since the attorney fees were not an issue between Class Plaintiffs and Class Counsel, but if it did apply, this situation falls under La.R.S. 13:4232 as an exception to the general rule of res judicata.[9] Additionally, Plaintiffs pointed out that the trial court was the "ultimate arbiter of attorney fees." (Case changed and emphasis removed.)

In their opposition, Class Counsel asserted that res judicata barred relitigation of the 2017 attorney fee award. They also asserted that the common fund consisted of more than just the past oil and gas royalties awarded and the interest on those sums, as it also included the future royalties and the value of the ownership rights secured to over 30,000 acres of land.

The hearing on the motion was held on June 20, 2022. The trial court held that the attorney fee matter had already been decided and was res judicata. The judgment denying the motion was signed on June 22, 2022.

On appeal to this court, we affirmed the judgment of the trial court, stating that "[a]fter a review of the record, law, and jurisprudence, we agree with the trial court that res judicata applies and prevents revisiting the attorneys' fees awarded in a final judgment in this case." *Crooks*, 23-478, at *5.

The supreme court accepted Plaintiffs' writ application. The supreme court noted that the trial court had originally awarded Class Plaintiffs ownership of property and monetary damages in the amount of $42,990,548.08, which consisted of $38,296,238.70 in expropriation damages, and $4,694,309.68 in past oil and gas royalty payments collected by the State, along with judicial interest from the date of

---

[9] Louisiana Revised Statutes 13:4232(A)(1) provides that res judicata does not bar another action by the plaintiff "[w]hen exceptional circumstances justify relief of the res judicata effect of the judgment."

judicial demand to the date paid. The total monetary amount of the judgment, with interest through the date of trial, amounted to $66,227,531.45. The trial court awarded attorney fees in the amount of $22,075,843.82, which equaled one-third of the total monetary amount awarded. However, the supreme court had reversed the expropriation award, which resulted in a significant reduction in Class Plaintiffs' recovery. In remanding the matter back to the trial court, the supreme court stated:

> Following this court's ruling, some of the class members retained separate counsel and filed a motion, seeking a reduction of the attorneys' fees proportionate with the reduction of their overall recovery. However, finding that *res judicata* applies and prevents revisiting the attorneys' fees awarded in the May 17, 2017 final judgment, the lower courts denied applicants' motion. In so ruling, the court of appeal found that the parties involved in the current motion were involved in the prior litigation of the matter, and therefore the parties involved are the same, thereby satisfying that requisite element of *res judicata*. It is noted that the issue of fixing the amount of attorneys' fees was reserved by the district court for determination separately, after the trial, and that the issue presented herein did not arise until after this court's reversal of the lion's share of plaintiffs' recovery. As it stands, the class is liable for $22,075,843.82 in attorneys' fees although they ultimately only recovered damages in the amount of $4,694,309.68, plus interest, derived from past due mineral royalties.

> As the district court correctly noted in its reasons for judgment, "[r]easonableness is the touchstone for the amount of the award of attorney fees," pursuant to Rule 1.5(a) of the Rules of Professional Conduct. It is further noted that [La.Code Civ.P.] art. 595(A) states as follows:

>> The court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class.

> As such, in light of the significant reduction in the overall damages ultimately awarded to the class in this case, this matter is remanded to the district court for a hearing to determine a reasonable attorney fee, pursuant to [La.Code Civ.P.] art. 595.

*Crooks v. Dep't of Nat. Res.*, 24-432, pp. 2–3 (La. 6/25/24), 386 So.3d 1073, 1075 (first alteration in original) (footnote omitted).

On remand, the trial court, on December 6, 2024, conducted a hearing on the motion to reconsider the attorney fees, after which it rendered judgment awarding attorney fees to Class Counsel in the amount of $5,571,218.75, with legal interest thereon from December 6, 2024, until paid in full. The attorney fees were to be paid out of the common fund on deposit in the registry of the court. Class Counsel filed a motion for reconsideration of the attorney fee award. Following a March 14, 2025 hearing, the motion was denied. The judgment of denial was signed on March 26, 2025.[10]

As a result of the trial court's reduction of the attorney fee award from $22,075,843.82 to $5,571,218.75, Class Counsel filed this appeal, asserting the following assignments of error:

1. The trial court's abandonment of the recognized factors for determining attorney fee awards mandated by [*State, Deptartment of Transportation and Development v. Williamson*, 597 So.2d 439 (La.1992),] was legally wrong.

2. Even if the trial court's abandonment of *Williamson* wasn't legally wrong, it did not correctly apply the method it adopted. Specifically, the trial court failed to recognize or apply a multiplier as required by the lodestar method.

3. The trial court's failure to consider the unrebutted expert testimony was legally wrong.

4. The trial court's award of interest on the attorney's fee award was legally wrong.

---

[10] This court determined that the judgment lacked the proper decretal language, in that it failed to specifically name the parties against whom the judgment was granted, and on order of this court dated August 7, 2025, the trial court issued an amended judgment dated September 8, 2025.

## OPINION

### Assignments of Error No. 1–3: The award of attorney fees following remand from the supreme court.

Following the January 2015 bench trial, the trial court ruled in favor of Class Plaintiffs and against the State. On June 29, 2016, Class Plaintiffs filed a Motion for Attorney Fees, Cost, and Incentive Awards. The parties waived their right to a contradictory hearing but submitted the motion based on the record, their written argument, and their briefs and supporting documentation. After consideration of the evidence, including the contract between Class Plaintiffs and Class Counsel,[11] together with the affidavits of experts regarding attorney fees, the trial court awarded attorney fees in the amount of $22,075,843.82.[12]

In its March 29, 2017 written reasons for judgment regarding the attorney fee award, the trial court noted that Class Counsel's attorney fee request of one-third of the monetary amount recovered was reasonable under the factors established by the supreme court in *Williamson*, stating:

> In *State Dept. of Transp. and Development v. Williamson*, 597 So.2d 439, 442 (La. 1992), the Louisiana Supreme Court instructs that there are ten factors to be taken into consideration by a court in determining a reasonable fee, to-wit:
>
> (1) The ultimate result obtained;
> (2) The responsibility incurred;
> (3) The importance of the litigation;
> (4) The amount of money involved;
> (5) The extent and character of the work performed;
> (6) The legal knowledge, attainment, and skill of the attorneys;

---

[11] Class Counsel's contingency fee contract provided that the attorneys would receive one-third of the amount recovered if settled with or without suit being filed and forty percent if an appeal is filed by either party. If the litigation was unsuccessful, Class Plaintiffs were not obligated to pay attorney fees, cost, or expenses.

[12] The total award of the judgment, with interest through the date of trial, amounted to $66,227,531.45. The attorney fee award of $22,075,843.82 was one-third of this amount.

(7)    The number of appearances made;
(8)    The intricacies of the facts involved;
(9)    The diligence and skill of counsel; [and]
(10)   The court's own knowledge.

Notably, these factors are derived from Rule 1.5(a) itself. *Id.* These factors, importantly for the court's purposes here, are applied on a case-by-case basis. *See Covington v. McNeese State University*, 12-2182, p. 6 (La. 5/7/13); 118 So.3d 343, 348.

With this in mind, the court turns now to the *Williamson* factors as they apply under the fact-specific-circumstances [sic] of this case. An analysis of the *Williamson* factors against the facts of this litigation strongly favors court approval of the Class Counsels' fee and expense application.

. . . .

The first and fourth *Williamson* factors, the ultimate results obtained, and the amount of money involved, strongly favor approval of the fee amount requested herein. Perhaps in any given case the most critical factor in determining the reasonableness of an attorney fee award is the degree of success obtained. Indeed, in the federal jurisprudence, "The United States Supreme Court and the Fifth Circuit have held that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F.Supp.2d 732, 796 (S.D.Tex.2008). Louisiana courts also analyze the ultimate result when examining the reasonableness of fees. *See, e.g., Smith v. State Dept. of Transp.& Development*, 04-1317 (La. 3/11/05); 899 So.2d 516 (La. 2005). Class Counsel clearly achieved exceptional results providing substantial awards for the class members. As previously noted in this opinion, as of May 16, 2016, the total award including the principal amount of $42,990,548.08 together with accrued legal interest from the date of judicial demand amounted to $66,227,531.45 with legal interest still accruing. This is obviously not your typical case.

In addition to the "common fund", Class Counsel successfully obtained a declaration that the class members, and not the State, owned the lands in dispute. Clearly, this declaration of ownership in favor of the class members is of great benefit and value to them especially considering that a portion of the properties will generate unknown sums in mineral royalties indefinitely.

This case is a high stakes class action that clearly provides substantial awards to class members both now and in the future. The court finds the result in the face of great risks at all stages of the litigation to be an admirable, just, and outstanding result. Thus, these factors support a substantial fee award.

The trial court also noted that according to the billable-hours documentation submitted, Class Counsel's representation in the case at that time consisted of 4,758.05 attorney hours, 888.14 paralegal hours, and 11.85 hours attributed to the work of other staff.[13]

With the supreme court's ruling reversing the inverse condemnation award, the common fund monetary award was reduced from a pre-interest amount of $42,990,548.08 down to the royalty amount of $4,694,309.68. Therefore, the fund did not have sufficient cash money available to cover the attorney fees awarded.

On remand from the supreme court, the trial court, on December 6, 2024, conducted a hearing on the motion to set the attorney fees and costs. Plaintiffs asserted that the common fund only included the royalties and interest and that the cash money deposited by the State into the common fund was not common to the class as a whole, but was only common as to those Lake Plaintiffs entitled to royalties from producing wells located on their property and the interest thereon. Additionally, the Lake Plaintiffs will have to prove their claim to the royalty funds prior to any monetary award being dispersed to them.

Class Counsel strenuously disagreed with Plaintiffs and asserted that the common fund is comprised of more than just the royalties and interest thereon owed by the State, because it also includes the immovable property rights acquired for the benefit of Class Plaintiffs. Class Counsel submitted the affidavit of Michael Cope, a Louisiana licensed real estate appraiser, who stated that the fair market value of the land at issue was $2,800.00 per acre as of May 15, 2017, and was $3,100.00 per acre

---

[13] The State did not dispute the hours submitted by Class Counsel.

11

as of his October 24, 2024 affidavit. During argument on the motion, Class Counsel acknowledged that instead of the 30,000 acres that was obtained for the class, only 22,000 acres were actually owned by Class Plaintiffs due to opt-outs. Nevertheless, at a current value of $3,100.00 per acre, this equaled a value of $68,200,000. Further, the royalty figure had increased to approximately $9,000,000.00, which equaled a value of $77,200,000.00 in benefits secured for Class Plaintiffs.

Class Counsel also submitted the affidavit of Patrick A. Juneau, a prominent Louisiana lawyer, who provided that in his expert opinion, based in part on attorney's fees awarded in other complex class action litigation, the original attorney fee award of $22,075,843.82 was "extremely reasonable."

In reassessing the attorney fees Class Counsel were to receive, the trial court stated:

> I will also point out this language, and it's from the Third Circuit, *McCain vs. Cassidy*, 11-124, Pages 5 and 6, La. App. 3 Cir. 6/8/11, 68 So.3d 631 at 635, quote, and I'm going to skip the internal citations: "Regardless of the language of the statutory authorization for an award of attorney fees or the method employed by the trial court in making an award of attorney fees, courts may inquire as to the reasonableness of attorney fees. Factors to be considered include the ultimate result obtained," which obviously in this case were monumental, "the responsibility incurred." This is one of those where it could have been all or none, so to speak, Contingency Fee Contract. "The importance of the litigation." This case is of historical significance. To my knowledge, it had never been judicially declared to be a river. "The amount of money involved," obviously that is quite substantial; "the extent and the character of the work performed." I don't see any need -- all of you can look at the record and know there's been a great amount of work. And it's been exemplary. "The legal knowledge, attainment, and skill of attorneys." That factor certainly is appropriate here. "The number of appearances involved," again, there were many; "the intricacies of facts involved," very complicated, complex litigations; "the diligence and skill of counsel," obviously quite obvious in this case; "and the court's own knowledge," which is substantial as well.
>
> "The amount awarded in attorney's fees is left to the sound discretion of the trial judge and should not be disturbed on appeal,

12

absent a showing of abuse of discretion," citing *Miller vs. Ecung*, 96-267, p 3, La. App. 3d Cir. 6/5/96, 676 So.2d 656, 658.

Obviously, there has been a substantial change. When the Supreme Court sustained the Exception of Prescription as to the condemnation damages, which were quite substantial, it makes a difference in the monetary award that is available quite obviously.
That is a major factor that is making a big difference, obviously. Because had that money been acquired for, we probably, may not be here today.

. . . .

But that being said, after careful study and review, I'm not suggesting that this is an expropriation case. Obviously it is not an expropriation case. There was a lot of work done on the inverse condemnation aspect of it, quite obviously, which ultimately the Supreme Court decided to grant Exception of Prescription. It takes that out of consideration.

I still stand by the fact that, yes, the land should be considered as a factor. But after careful review and the complexities of this litigation, I will point out there is a case, and I'm not citing this case for authority, I'm simply going to point out what an attorney apparently stated, *City of Baton Rouge vs. Donahue*, 380 So.3d 666, 2023, relatively recent, vintage. Again, that was an expropriation case. And again, you know I know this is not an expropriation case. But attorney Donahue stated that in his experience the rate for handling expropriation matters generally ranged from Two Hundred and Fifty Dollars to Five Hundred Dollars per hour ($250 to $500.00 per hr), and his request was for Three Hundred Dollars per hour ($300.00 per hr).

Well, this case is much more complex than an ordinary expropriation case, although they can get complicated as well. Anyway, I have decided, after careful study and review, and I am of the belief that the Supreme Court wanted this revisited, in light of the fact that there's been a substantial amount of monies no longer available because of the granting of the Exception of Prescription, after careful thought, study and review, it is my opinion, and I believe they call this the Lodestar Method, if I remember right, based upon the hours that were worked through May 16, 2016, as well as the hours to-date, I will call it, and I'm trying to be careful here, because it's always a possibility of writing a figure down wrong. But anyway, using the total billable hours, which there's been no contest as to any item that was charged or no dispute that these services were not in fact rendered, these professional services, it's strictly a matter of figuring out what an appropriate attorney's fee would be, considering all factors that now exist; anyway, after careful study and review, it is my opinion that Class Counsel

13

should be paid Four Hundred and Twenty-five Dollars per hour ($425.00 per hr).

The trial court then multiplied the total hours of 13,108.75 submitted by Class Counsel by the hourly rate of $425.00 per hour to reach an attorney fee award of $5,571,218.75.

Class Counsel asserts that under the contract with Class Plaintiffs, it was entitled to a fee of forty percent of the recovery obtained, and based on the value of the land and the continuing mineral royalties recovered, the original attorney fee of $22,075,843.82 should be reinstated.

At the initial 2017 hearing to determine the amount of attorney fees, the State utilized the affidavit of Dane S. Ciolino, a professor at Loyola Law School and an expert regarding legal fees. Mr. Ciolino indicated that the issues presented in this litigation were "'novel' and 'difficult[,]'" and, as a result, the hourly rates Class Counsel receive should be on the high end of ordinary attorney rates in Louisiana. He stated that Class Counsel possessed "extraordinary ability," "undertook significant risks in their" representation of the Class Plaintiffs, and obtained "extraordinary" results. Mr. Ciolino stated that since this case involved an inverse condemnation action, which shifted the responsibility for paying legal fees to the State, the attorney fees should be set utilizing a "lodestar method." He explained that under the lodestar method, the court determines the baseline lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The court may, thereafter, adjust the lodestar figure using a "multiplier," the purpose of which "is to provide fair and reasonable compensation at market rates for each reasonable hour worked, taking into account the risk assumed by the lawyer of non-collection."

14

Mr. Ciolino noted that the lodestar method includes most, if not all, of the relevant factors constituting a reasonable attorney fee and that as instructed by the court in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662 (2010), an enhancement or multiplier should not be awarded on a factor that is subsumed in the lodestar calculation.

In Mr. Ciolino's opinion, an increase of the lodestar baseline fee by a multiplier was appropriate in this case for two reasons: First, because of the extraordinary time, nearly ten years at that time, that the case had been pending, during which time Class Counsel had invested time and money for which they had yet to be compensated. Second, because of the significant risk of loss that both Class Plaintiffs and Class Counsel undertook in pursing this litigation. Based on these factors, it was Mr. Ciolino's opinion that a higher than average multiplier of between two and four should be utilized.

Also at the initial 2017 hearing, Class Counsel relied on the affidavit of Bernard McLaughlin, Jr., as an expert regarding the appropriate legal fees in this case. Mr. McLaughlin felt that based on the *Williamson* factors and the contingency contract that called for attorney fees in the amount of forty percent, an attorney fee of one-third of the recovery was fair and reasonable. Mr. McLaughlin pointed out that in regard to the *Williamson* factors, this was a very complex and difficult case with substantial risk to Class Counsel, which had been ongoing for a number of years. Class Counsel had spent $386,000.00 on expert costs. Additionally, Class Counsel had taken the case on a contingency basis since it was unlikely that Class Plaintiffs would be able to pay its standard hourly rate on a case where the outcome was so uncertain.

15

The trial court's original attorney fee award of $22,075,843.82 was based on a one-third percentage of the total monetary damages with interest. When the trial court revisited the award following remand, it utilized the lodestar method to set the attorney fees. Class Counsel asserts that they should be paid based on a percentage of the total recovery, but if the lodestar method is utilized, then the trial court erred by failing to apply a multiplier to the baseline lodestar fee as recommended by Mr. Ciolino.

In *Grand Pointe Homeowners Association, Inc. v. Heymann*, 20-36 (La.App. 3 Cir. 11/12/20), 307 So.3d 285, the defendant appealed the trial court's award of attorney fees, asserting that the trial court erred in utilizing the lodestar method to calculate the amount of attorney fees to which the plaintiff was entitled. In addressing the method utilized by the trial court to calculate the attorney fee award, we stated:

> The trial judge mentions the lodestar method for calculating attorney fees as a basis for its ruling. While Louisiana courts do employ this method in matters concerning federal law, we generally employ the method enunciated in *Rivet* [*v. State, Department of Transportation and Development*, 96-145 (La. 9/5/96), 680 So.2d 1154,] when determining the reasonableness of attorney fees claimed and hours worked. As noted in footnote 1[14] of this opinion the court generally considers the same

---

[14] *Grand Point Homeowners*, 307 So.3d at 287 n.1, quotes from *Vasquez v. Kraft Heinz Foods Co.*, No. 3:16-cv-2749-WQH-BLM, 2020 WL 1550234, at *7 (S.D. Cal. Apr. 1, 2020), as follows:

> "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). After computing the lodestar figure, the district court may then adjust the figure upward or downward taking into consideration twelve "reasonableness" factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9)

16

factors under either the lodestar or *Rivet* method. Our review of the record before us discloses that under either method of calculation the attorney fee award is reasonable and that Grand Pointe's evidence is uncontradicted.

*Id.* at 288–89 (footnote omitted).

As was the case in *Grand Pointe Homeowners*, the attorney billing records in this matter were uncontroverted. Additionally, Class Counsel submitted the expert opinions of Mr. McLaughlin and Mr. Juneau regarding the reasonableness of the amount of attorney fees, and the only evidence that countered their opinions was Mr. Ciolino's opinion, which advocated applying a multiplier to the lodestar calculation.

In *Covington v. McNeese State University*, 12-2182, p. 6 (La. 5/7/13), 118 So.3d 343, 348, the supreme court stated:

> The appellate court reviews an award of attorney's fees for an abuse of discretion. *Corder v. Gates*, 104 F.3d 247, 249 (9th Cir.1996); *see also Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. The district court's factual determinations will not be set aside absent manifest error. *Stobart v. State, Dep't of Trans. and Dev.*, 617 So.2d 880, 882 n. 2 (La.1993).

Although the trial court is afforded much discretion in awarding attorney fees, we find that the trial court abused its discretion when it failed to apply a "multiplier" or "enhancement" to the baseline lodestar fee, particularly given the expert evidence, including the report of Mr. Ciolino, who the State hired to limit the amount of attorney fees received by Class Counsel. An "enhancement may be appropriate" when a "superior attorney performance is not adequately taken into account in the lodestar calculation[,]" where "the attorney's performance includes an extraordinary

---

the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n. 8 (9th Cir. 1996).

17

outlay of expenses and the litigation is exceptionally protracted[,]" and/or where the "attorney's performance involves exceptional delay in the payment of fees." *Perdue*, 559 U.S. at 554–56. All of these factors are present here. Therefore, we hold that the trial court's award of $5,571,218.75, based solely on an hourly-fee basis, should be multiplied by a factor of four to increase the attorney fee award to $22,284,875.00. This is roughly equivalent to the original attorney fee award, which was based on a one-third percentage of the monetary award without considering the value of the property. Further, it is less than the original percentage method when factoring in the benefit to the entire class, including the value of the property and royalties, of $77,200,000.00, which amounts to $25,733,333.33.

Regarding whether the common fund is only composed of money, La.Code Civ.P. art. 595 provides, in pertinent part, "The court may allow . . . reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery . . . is had which is beneficial, to the class." Here, through the efforts of Class Counsel, the class was granted ownership of 22,000 acres of land and the associated oil and gas royalties. The evidence at trial established that this land is valued at $68,200,000.00 and that the royalty amount has increased to approximately $9,000,000.00, for a total value of $77,200,000.00.

In *Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 872 (5th Cir. 2002), the court analyzed La.Code Civ.P. art. 595(A), stating:

> Literally, this article is expressed (1) *permissively*, using "may" rather than "shall"; and (2) *conditionally*, authorizing the court to allow the representative parties to recover litigation expenses (which expressly include attorney's fees) *only if* the class litigation is the producing cause of either (a) a common "fund" that is *available* to the class *or* (b) some other type of "recovery or compromise" that is *beneficial* to the class. We first note that, on its face, this code article does not condition the court's authority to grant fees on the class's being successful to the point of judgment; rather, art. 595(A) requires only the availability of

18

either a common fund or some other result that is beneficial to the class: The fund or the other recovery can eventuate either from a judgment or from some non-judicial disposition, such as settlement, compromise, alternative dispute resolution, or the like.

We next note that the plain wording of Article 595(A) does not literally limit the permissible sources available for attorney's fees. Facially, the code article does not restrict the source of such court-allowed fees to the fund or other recovery for the benefit of the class; the article requires only that such benefit result from the class litigation.

In *Avants v. Kennedy*, 02-830, pp. 14–15 (La.App. 1 Cir. 12/20/02), 837 So.2d 647, 656–57, *writ denied*, 03-203 (La. 4/4/03), 840 So.2d 1215, the court explained:

Generally the right of an attorney to remuneration for services is dependent upon a contract, either express or implied. *Louisiana State Mineral Board v. Abadie*, 164 So.2d 159, 166 (La.App. 1st Cir.1964). An exception to this rule is recognized, however, in those instances where an attorney alone and at his own expense has successfully maintained an action for the preservation, protection, increase or creation of a fund in which persons other than his own clients may share or from which they may benefit. *Kirkpatrick v. Young*, 456 So.2d 622, 625 (La.1984); *In re Interstate Trust & Banking Company*, 235 La. [825,] 842, 106 So.2d [276,] 282 (on rehearing); *Abadie*, 164 So.2d at 166. In such instances, equity requires that all who benefit must pay the costs and expenses incident thereto, including attorney's fees. *Abadie*, 164 So.2d at 166. The exception allowing for the award of an attorney fee even in the absence of a contract has been termed the "fund doctrine" or "common fund doctrine."

In *In re Interstate Trust and Banking Company*, a fund amounting to more than $700,000.00 had been created and brought into existence due solely to the efforts of the attorneys therein. The attorneys represented some of the bank's depositors and creditors in opposing certain tableaus of distribution in a liquidation matter, because of a failure to provide for the payment of interest on unpaid balances that had been frozen. As a result of their efforts, a judgment was rendered ordering the payment of legal interest of **all** depositors and creditors, including those who failed to oppose the distribution. *In re Interstate Trust & Banking Company*, 235 La. at 828–829, 106 So.2d at 277.

In holding that the attorneys were entitled to a reasonable fee to be paid out of the interest fund, the Supreme Court noted that, except for the services of the attorneys, none of the depositors would have received any interest on any of their frozen deposits. Consequently, all depositors as a class benefited and were enriched by these attorneys' efforts. Thus, the court determined that under these facts and circumstances, the attorneys had brought themselves within the scope

19

of the "fund doctrine" and, as such, were entitled to recover a reasonable fee for their services. *In re Interstate Trust & Banking Company*, 235 La. at 842–843, 106 So.2d at 282 (on rehearing).

Had it not been for the efforts of Class Counsel over twenty years of litigation, the class in this case would not have received $77,200,000.00 in land and royalties.[15] The patrimony of the class beneficiaries has been greatly increased by the efforts of Class Counsel.[16]

We, therefore, hold that an award of $22,284,875.00 in attorney fees is fair and reasonable, and thus, we amend the award of attorney fees from $5,571,218.75 to $22,284,875.00 pursuant to La.Code Civ.P. art. 595, and affirm as amended.

*Assignment of Error No. 4. Interest on the attorney fee award.*

The trial court's March 26, 2025, judgment awarded Class Counsel legal interest on their attorney fees from December 6, 2024, until paid.

In *Deblieux v. Arkla Industries, Inc.*, 390 So.2d 233, 237 (La.App 3 Cir. 1980), *writ denied*, 396 So.2d 901 (La.1981), we held that "interest on an award of attorney's fees is allowable only from the date of the judgment, since they are not ascertainable prior to that time."

It is Class Counsel's position that interest should be paid from the date attorney fees were originally granted, May 15, 2017, since the attorney fee award has been revised but never set aside. In support of its position, Class Counsel offers

---

[15] Applying the accepted "Rule of 72" exemplifies the fallacy of an award of attorney fees in this case based solely on the hours worked times an hourly rate, considering that this litigation has spanned almost twenty years. Using a ten percent rate of return, a $1 million fee paid twenty years ago would be worth over $5 million now. Considering the time value of money alone is a consideration consumed within the lodestar rationale for the application of a multiplier.

[16] "Patrimony is the total mass of existing or potential rights and liabilities attached to a person for the satisfaction of his economic needs." *Creech v. Capitol Mack, Inc.*, 287 So.2d 497, 504 (La.1973).

20

our decision in *Corbello v. Iowa Production*, 01-567 (La.App. 3 Cir. 12/26/01), 806 So.2d 32, *aff'd in part and rev'd in part*, 02-826 (La. 2/25/03), 850 So.2d 686, in which we held that although the trial court had great discretion in determining an award of attorney fees, its award of $689,510.00 was abusively low, and after utilizing the *Williamson* factors, we increased the attorney fees to $4 million.[17] Important to the issue at hand, we awarded legal interest from the date of the trial court's judgment, stating: "Accordingly, legal interest is awarded on the attorney fees, expert witness fees, and other court costs from the date of the judgment awarding same." *Id.* at 53.

In *Brooks v. United States*, 757 F.2d 734, 740–41 (5th Cir. 1985), the court explained:

> In the instant case, the original judgment was substantially affirmed by this Court on appeal. The district court on remand, acting consistently with this Court's prior opinion, reduced the Government's comparative fault by fifteen percent and again entered judgment for the plaintiffs. Under such circumstances, even where the case is nominally reversed in part and remanded, the case is to be treated for interest purposes as though the portions of the judgment unaffected by the reversal and remand were affirmed. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 545 (5th Cir.1983) (en banc); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1311 (9th Cir.), *cert. denied*, 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982); *Perkins v. Standard Oil Co. of California*, 487 F.2d 672, 676 (9th Cir.1973). *But see Merchants Matrix Cut Syndicate, Inc. v. United States*, 284 F.2d 456, 459 (7th Cir.1960).
>
> Such a result is consistent with this Court's decision in *Copper Liquor.* In that case, this Court, sitting en banc, held
>
> > If a judgment for attorneys' fees or costs is later modified by the district court or an appellate court, whether the award is increased or reduced, interest on the revised award will run from the date of the original judgment unless, of course, the allowance of any amount is reversed. *Perkins v. Standard Oil of California*, 487

---

[17] The supreme court affirmed our increase in attorney fees. *Corbello*, 850 So.2d 686.

21

F.2d at 676; *Premier Corp. v. Serrano*, 471 F.Supp. 444 (S.D.Fla.1979). As the Ninth Circuit observed, interest properly accrues from the date of the initial judgment "because that is the date on which the correct judgment should have been entered." *Perkins v. Standard Oil Co. of California*, 487 F.2d at 676.

Here, Class Counsel was awarded attorney fees in the amount of $22,075,843.82 via the May 15, 2017 judgment. This award was affirmed by this court in *Crooks*, 263 So.3d 540. The State's supervisory writ to the supreme court did not address the attorney fee award. *See Crooks*, 340 So.3d 574. Thus, this award stood until it was adjusted by the trial court seven years later via its December 6, 2024 judgment. Now, we are amending the judgment awarding attorney fees by adjusting the amount once again and affirming as amended.

In *Sharbono v. Steve Lang & Son Loggers*, 97-110, pp. 6–7 (La. 7/1/97), 696 So.2d 1382, 1386, the supreme court stated:

> The world of legal interest may be divided into two hemispheres. Prejudgment interest, which stems from the damages suffered by the victorious party, is meant to fully compensate the injured party for the use of funds to which he is entitled but does not enjoy because the defendant has maintained control over the funds during the pendency of the action. *See Wickham Contracting Co., Inc. v. Local Union No. 3, International Brotherhood of Elec. Workers, AFL–CIO*, 955 F.2d 831 (2d Cir.1992), *cert. denied*, 506 U.S. 946, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992); *Hebert v. Exxon Corp.*, 770 F.Supp. 314 (E.D.La.1991); *American Motorist Ins. Co. v. American Rent-All, Inc.*, 617 So.2d 944 (La.Ct.App. 5th Cir.1993), *on reh'g*, 617 So.2d at 947 (citing *Hebert*); *Prager v. New Jersey Fidelity and Plate Glass Ins. Co.*, 245 N.Y. 1, 156 N.E. 76 (1927) (Cardozo, C.J.) (noting that prejudgment interest is frequently controlled by considerations of "policy and justice," and that an award of prejudgment interest "may be necessary to make plaintiff whole"). In contrast, postjudgment interest is a prospective award whose purpose is to encourage prompt payment of amounts awarded in the judgment, *and* to compensate the victorious party for the other party's use of funds to which the victor was entitled under the judgment. *Cf. State, Through Division of Administration v. Algernon Blair*, 445 So.2d 133, 136 (La.App. 3d Cir.1984) (addressing postjudgment interest in the arbitration setting); *Mt. Airy Refining Co. v. Clark Acquisition, Inc.*, 470 So.2d 890 (La.App. 4 Cir.1985) (same).

22

It would be patently unfair to deny Class Counsel the post-judgment interest on the attorney fees they were awarded nearly eight years ago and have been deprived of the use thereof since. Therefore, Class Counsel is entitled to interest on the attorney fee award from the date it was originally awarded, May 15, 2017.

## DECREE

For the foregoing reasons, the judgment of the trial court awarding attorney fees to Class Counsel is amended by increasing the amount of attorney fees awarded to Class Counsel from $5,571,218.75 to $22,284,875.00 and by holding that the legal interest on the attorney fee award is to run from May 15, 2017, until paid, and is affirmed as amended.[18]

All costs of this appeal are assessed to Plaintiffs, Dennis Breland, Sheila Hudspeth, Jackie Wilson, Chet Whatley, Michael "Ben" Whatley, John Dahl Duke, Roger "Rocky" Ray, Nellie Ray Constance, Jeffery Willis, Michelle Willis, Chase Willis, Lindsay Willis, Trent Dauzat, John Little, Jennifer Little, Meredith Hailey, Carrie Lynn Huffman, Ricky Shirley, Dana Shirley, John "Rusty" Berry, Lauren Berry, and Clarence William "Bill" Breland, Jr.

**AFFIRMED AS AMENDED.**

---

[18] We note that pursuant to a May 16, 2025 order, the clerk of court was ordered to immediately release $5,910,861.26 held in the registry of the court to Class Counsel, consisting of $5,718,905.28, plus $191,955.98 in legal interest from December 6, 2024, through May 1, 2025, as payment of attorney fees, interest, and cost awarded by the trial court in its March 26, 2025 judgment. This acts as an offset to the award as amended.